**DAUGHERTY v. CHICAGO, R. I. & G. RY. CO. et al.**

No. 13357.

Court of Civil Appeals of Texas.
Fort Worth.

April 24, 1936.

Rehearing Denied May 22, 1936.

Felix M. Bransford and A. W. Christian, both of Fort Worth, for appellant.

W. H. Slay and Robert Harrison, both of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

I. D. Daugherty has appealed from a judgment denying him a recovery of damages resulting from a collision between the locomotive of a freight train of the Chicago, Rock Island & Gulf Railway Company and an automobile driven by plaintiff, at the crossing of the defendant's railway track and Twenty-Ninth street, a public street in the city of Fort Worth.

The railway track crosses Twenty-Ninth street in a northerly and southerly direction, and Terry street runs into Twenty-Ninth street from the north on the east side of the railway track, and, as it approaches the crossing from the north, it runs parallel with the track about 50 feet distant therefrom for more than 200 feet.

Immediately preceding the accident, which occurred at night, the freight train was running north 18 miles per hour, with the headlight of the locomotive burning, and plaintiff was traveling in a southerly direction along Terry street. A small mound a short distance south of the crossing was the only obstruction to plaintiff's full view of the headlight for some distance before he reached the crossing. When he reached Twenty-Ninth street and turned on to the crossing, he realized the danger of being struck by the locomotive just as the front wheels of his automobile struck the east rail of the railway track. He then stopped his car and backed it out of the way of the locomotive, but from fright he again started his car forward just in time to be struck by the locomotive.

In answer to special issues, the jury found that plaintiff has sustained damages for personal injuries resulting from the collision in the sum of $2,000, and damages to his automobile in the sum of $275. They found that, as the train approached the crossing, the whistle of the locomotive was sounded at the distance prescribed by the statutes. They further found that the bell was not kept ringing until the crossing was reached, as required by the statute, but that failure was not a proximate cause of the accident. Further findings were as follows:

"Special Issue No. 5:

"Question: Do you find from a preponderance of the evidence that the engineer of the Rock Island train discovered the plaintiff in a position of peril in time, by the use of all the means at his hand, consistent with his own safety and the safety of his train, to have avoided the collision? Answer 'yes'. or 'no.' Answer: Yes.

"Special Issue No. 5–A:

"If you have answered the foregoing question in the negative you need not answer this question, but if you have answered same in the affirmative, then answer:

"Question: Do you find from a preponderance of the evidence that the failure

if any you have so found on the part of the engineer of the Rock Island train to use all means at his hand consistent with his own safety and the safety of his train, to have avoided the collision, was negligence? Answer 'yes' or 'no.' Answer: No.

"In connection with the foregoing issue you are instructed that by the term 'negligence' is meant the failure to use ordinary care.

"Special Issue No. 6:

"Question: Do you find from a preponderance of the evidence that by the use of ordinary care for his own safety before going on the crossing plaintiff would have discovered the approach of the train in time to have avoided the collision? Answer 'yes' or 'no.' Answer: No.

"Special Issue No. 7:

"Question: Do you find from a preponderance of the evidence that in the exercise of ordinary care for his own safety plaintiff would have stepped out of his automobile after it stalled in time to have avoided injury to himself? Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 8:

"If you have answered the foregoing question in the affirmative, and only in that event, then answer:

"Question: Was the failure of the plaintiff to step out of his automobile after the same had stalled a proximate cause of the injuries to himself? Answer 'yes' or 'no.' Answer: Yes."

After the verdict was returned, the court overruled plaintiff's motion for judgment in his favor on the verdict, and sustained defendant's motion for a judgment that plaintiff take nothing.

The issue of negligence after the engineer in charge of the locomotive discovered plaintiff's peril was tendered in plaintiff's pleadings as one of the grounds for relief, and all the assignments of error and propositions thereunder are based on the contention that the finding of the jury in answer to special issue No. 5 entitled him to a judgment on his pleading of negligence after his peril was discovered by the engineer. It is insisted that the finding that the failure of the engineer to use all means to avoid the injury after discovering the peril of plaintiff was of itself a finding of negligence as a conclusion of law.

A number of decisions are cited in support of that contention, including Baker

v. Shafter (Tex.Com.App.) 231 S.W. 349; Northern Texas Traction Co. v. Weed (Tex.Com.App.) 300 S.W. 41; Texas & P. R. Co. v. Breadow, 90 Tex. 26, 36 S.W. 410; Wilson v. Southern Traction Co., 111 Tex. 361, 234 S.W. 663.

There is no statute which required the engineer, after discovering plaintiff's peril, to use all means at his command, consistent with the safety of himself and the train, to avert the injury, and whether or not such was his duty is to be determined by the common law of negligence. In the case of Gulf, C. & S. F. Ry. Co. v. Gasscamp, 69 Tex. 545, 7 S.W. 227, 228, this was said in the opinion of Justice Gaines: "According to the rule in this court, in order that an act shall be deemed negligent per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it."

In most of the cases cited and relied on by appellant, the principal point discussed and determined was that contributory negligence of an injured person is no bar to a recovery if it appears that the injury could have been averted if the defendant's servant, after discovering the peril of the injured person, had used all means at hand consistent with the safety of himself and others on the train, with no special discussion whether or not the failure to use such care would be negligence per se or a question for the jury. The case more nearly in appellant's favor on that point is Gulf, C. & S. F. Ry. Co. v. Lankford, 88 Tex. 499, 31 S.W. 355. We quote the following from the opinion in that case:

"After giving correct charges upon the issues of defendant's negligence and plaintiff's contributory negligence, the court charged the jury as follows: 'If you believe from the evidence that plaintiff or his wife failed to exercise ordinary care, and that such failure contributed to the injury of plaintiff's wife, yet if you should find that before plaintiff's wife received her injuries, if she was injured, it became known to either of the agents or servants of the defendant who were engaged in operating said engine and cars that there was about to be a collision between said cars and the wagon in which plaintiff and his wife were riding, and if this became known to such agent or servant in time for him to have stopped said cars or to have diverted them from the track upon which they were run-

ning, and if he could have done so by the means then at hand in time to have prevented said injuries, then you will find for the plaintiff.'

"It is urged that this charge is upon the weight of the evidence in that it virtually instructs the jury that a failure to stop or divert the cars would be negligence, whereas the question whether such failure was negligence, under all the circumstances, should have been left to the jury.

"The question, then, is, did the court in said charge invade the province of the jury, and determine for them a question of fact which, under the law and the evidence, they could have rightfully determined otherwise? or, in other words, could the jury, under the evidence, after finding the facts they were required to find by the charge in order to find for plaintiff, have rightfully refused to find that a failure to stop or divert the cars was negligence?

"An analysis of the charge shows that the jury were required to find from the evidence the following facts: (1) That, before plaintiff's wife was injured, it became known to one of defendant's servants operating the train that there was about to be a collision between the train and wagon; (2) that such fact was known to such servant in time for him to have stopped or diverted the cars; (3) that by the use of means then at his command he could have stopped or diverted them in time to have prevented said injuries.

"The verdict must be taken as establishing each of said facts. In addition thereto, the undisputed evidence shows that neither of the servants of defendants engaged or concerned in moving said cars made any effort whatever to avoid the collision, which, according to the facts above found, they knew was going to happen.

"Stated briefly, the facts, found and undisputed as aforesaid, show that a servant of the company engaged in propelling a car knows that there is an impendent collision which, but for his intervention, will happen between such car and a wagon, in which a number of persons are riding, which collision he has the means at hand to prevent by stopping or diverting the car, but makes no effort to do so, and the collision consequently occurs.

"Could the jury, with these facts established, rightfully have refused to find such servant negligent? We think not.

"With such facts found or admitted, there would have been no support for such a verdict."

The engineer testified that the train was a heavy freight train and was traveling about 18 miles per hour when it approached the crossing; he had finished blowing four blasts from the whistle when the locomotive was about 60 feet from the crossing; he saw plaintiff's car approaching the crossing on Twenty-Ninth street when it and the locomotive each was about 200 feet therefrom; when he first saw the automobile, it was traveling as fast as the train, but slowed down, and it appeared to witness that it was going to stop before reaching the crossing, but, instead of stopping, it continued on its course and suddenly stopped with its front wheels on the east rail of the track. At that time the engine was 70 feet distant from the crossing. Witness then shut off steam of the engine and reached for the air brake, but did not apply it because the automobile then backed off the track far enough to allow the train to pass without striking it. Then, when the locomotive was about 30 feet from the crossing, the automobile suddenly started forward and got right on the track in time to be struck. When it started forward, witness applied the emergency brake and stopped the train as quickly as possible. He admitted telling some one immediately after the accident that he could and would have stopped the engine if plaintiff had not backed the automobile off the crossing. His testimony was sufficient to support the finding of the jury in answer to special issue No. 5–A that the engineer was not guilty of negligence in failing to use all means at hand to avoid the collision.

By reason of the facts so testified, this case is clearly distinguishable from the decision in the Lankford Case, supra, wherein it is specifically pointed out and emphasized that the engineer made no effort to avert the accident after the impending danger was known to him in time for him to have avoided striking the wagon in which plaintiff and his wife were riding, and therefore, since no other reasonable conclusion could have been drawn from the evidence than that of negligence, the court did not err in failing to submit that issue to the jury.

In the case of Texas Electric Service Co. v. Kinkead (Tex.Civ.App.) 84 S.W.(2d) 567 (writ dismissed), as shown in opinion by Justice Brown, this court held that the test

to be applied in determining the issue of discovered·peril is whether or not a person, in the exercise of ordinary care, similarly situated, would have resorted to all means at his command to avert the injury, and, if such care was exercised by the driver of the truck, he discharged his full duty. As shown in the opinion, that was the test announced in the decision cited in San Antonio & A. P. Railway Co. v. McGill (Tex. Civ.App.) 202 S.W. 338. And the same test is clearly implied in the opinion of Justice Greenwood in Wilson v. Southern Traction Co., 111 Tex. 361, 234 S.W. 663, which is one of the cases cited by appellant.

When the finding of the jury in answer to issues 5 and 5–A are read in conjunction with each other, and considered in the light of all the facts and circumstances in evidence, as must be done, no conflict appears necessitating a reversal of the judgment and a remand of the case for another trial.

Accordingly, all assignments of error are overruled, and the judgment of the trial court is affirmed.